# LaRusso & Conway, LLP

300 OLD COUNTRY ROAD
SUITE 341
MINEOLA, NY 11501
TEL: (516) 248-3520 • FAX: (516) 248-3522

January 18, 2012

Hon. Eric N. Vitaliano
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, N.Y. 11201

Re:  United States v. Jerome Caramelli
Criminal Docket No. 10-CR-0010(ENV)

Dear Judge Vitaliano:

Defendant Jerome Caramelli "Jerry" or "Caramelli" respectfully submits this letter in connection with his sentencing, which is currently scheduled for Friday January 27, 2012. As demonstrated in more detail below, we respectfully submit that a sentence substantially below that of the advisory guidelines is warranted in this case.

## I. BACKGROUND/GUIDELINE CALCULATIONS:

As the Court is well aware, Mr. Caramelli pled guilty to Counts Ten and Eleven of the above-captioned Indictment. Those counts charged Caramelli with illegal gambling in violation of Title 18, United States Code, Section 1955(a), and extortionate collection of credit in violation of Title 18, United States Code, Section 849(a). The Probation Department has prepared a Pre-Sentence Report ("PSR") which sets forth Caramelli's total adjusted offense level as a level 19. That level would correspond to an advisory guideline range of 30-37 months. Pursuant to the terms of the plea agreement, as set forth in paragraph 225 of the PSR, the government has agreed to an additional one level reduction (global resolution) bringing Caramelli's advisory guideline down to a level 18 and an advisory range of 27-33 months. On December 16, 2011 we filed a two page objection

to the PSR. Copies were filed with Probation as well as the Assistant United States Attorney. A copy of that letter is attached hereto as Exhibit 1. We respectfully submit that the final adjusted guideline level should be affixed at Level 17 with an advisory range of 24-30 months. We submit that the four level enhancement for leadership role relating to the gambling charge (which was not calculated or included in the plea agreement) is unwarranted. Based upon a sentencing range of 24-30 months we respectfully submit, based upon the factors below, that a sentence well below that range is warranted in this case.[1]

Furthermore, our December 16, 2011 submission to probation also objected to Jerry being "labeled" as an associate of the Bonnano Family. Jerry fully acknowledges his guilt in this case and accepts his responsibility for his actions. He fully acknowledges his involvement in an illegal gambling ring. His involvement in the in the instant case consists of aiding some individuals access to bet and then collecting or paying those who did bet. In that capacity, Jerry was approached by an individual who we believe was cooperating with the government (unbeknownst to Jerry). Jerry did assist him and another individual in access to placing bets. Those individuals then accumulated losses of over 150,000 for which Jerry was responsible for. While Jerry did not affirmatively seek out his co-conspirators for help they did interject themselves and Jerry readily admits his involvement with them in an attempt to collect the monies. While verbal threats were made it was done so out of frustration and no harm or any actual violence came to the individuals who owed the money. We do not seek to minimize the magnitude of the crime or Jerry's involvement in such, but only to illustrate that Jerry is not a member or associate of organized crime.

---

[1] In our December 16, 2011 submission to Probation we also contested the inclusion of numerous paragraphs in the PSR that do not relate to Mr. Caramelli. In this Indictment the government joined numerous defendants together and while Mr. Caramelli does fully accept his actions for his conduct, it is clear that he had no role in the other charges set forth in the Indictment. Additionally, our December 16, 2011 letter also corrected certain paragraphs regarding his 2007 tax return and financial disclosure forms. Copies of the previously sent documents were attached to our December 16, 2011 submission.

## II **DISCUSSION**

As the court is well aware, United States v. Booker 543 U.S. 220 (2005) restored district courts' ability to fashion a sentence tailored to the individual circumstances of the case by requiring courts to consider all of the factors set forth in Title 18, U.S.C Section 3553(a). Indeed, under Title 18 U.S.C. §3553(a) courts are *required* to sentence below the range if such a sentence would be sufficient to achieve the purpose of punishment. Because the sentencing guidelines are merely advisory in the wake of Booker, the Court may consider all of the factors set forth in 18 U.S.C. § 3553(a) and sentence the defendant to a term of incarceration less than the advisory guidelines.

Following up on their decision in Booker the Supreme Court in Gall v. United States, 552 U.S 38 (2007) and Kimbrough v. United States, 552 U.S. 85 (2007), effectively reaffirmed the district court's broad sentencing discretion by permitting them to impose a sentence after considering "all" the §3553(a) factors, with the Guidelines being only one such consideration. United States v. Jones, 415 F.3d 256 (2d Cir. 2005). Any attempt to give special weight to the Guideline ranges would be contrary to Booker which ruled the Guidelines advisory.

The sentencing guidelines are only the "starting-point and the initial benchmark." Kimbrough v. United States, 552 U.S. 85 (2007)(citing, Gall v. United States, 552 U.S. 38 (2007). Moreover, the Court "may not presume that the Guideline range is reasonable." Gall v. United States, 552 U.S. 38 (2007). Nor should the sentencing court presume a non-guideline sentence "unreasonable." United States v. Jones, 415 F.3d at 256 (2d Cir. 2005); citing, Irizarry v. United States, 553 U.S. 708 (2008).

Rather, the sentencing court must make an individualized assessment based upon the facts presented after full consideration of all the § 3553(a) factors. Gall, 552 U.S. 38 (2007). The Court may, "in the particular case [determine that] a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." Kimbrough v. United States, 552 U.S. 85 (2007) (citing, 18 U.S.C. § 3553(a)) The "greater than necessary" language of § 3553(a) includes the need for a sentence to

"reflect the seriousness of the offense," "promote respect
for the law," and "provide just punishment for the
offense." The Supreme Court recognized that a prison
sentence may not promote respect for the law if it appears
unduly harsh after consideration of all the factors of a
particular case. Gall v. United States, 552 U.S. 38 (2007).

The Second Circuit, in light of these Supreme Court
holdings has emphasized that "while a sentencing Court is
statutorily obligated to give fair consideration to the
guideline before imposing sentence, in the end, it must
make an individualized assessment of the sentence warranted
by Section 3553(a) based on facts presented." United States
v. Jones, 415 F.3d.256, (2nd Cir.2008) (quoting Gall, supra
at 597). "Accordingly, non-guideline sentences are not
viewed with 'inherent suspicion' nor are they subject to a
higher standard of review than abuse of discretion."
Among the factors in 18 U.S.C. § 3553 are (1) the nature
and circumstances of the offense and the history and
characteristics of the defendant, (2) the need for the
sentence imposed to (A) reflect the seriousness of the
offense, to promote respect for the law, and to provide
just punishment for the offense, (B) to afford adequate
deterrence to criminal conduct, and (C) to protect the
public from further crimes of the defendant. In addition to
the factors set forth in 18 U.S.C. Section 3553, 18 U.S.C.
§ 3661 provides that "no limitation shall be placed on the
information concerning the background, character and
conduct of a person convicted of an offense which a court
may receive for the purpose of imposing an appropriate
sentence."

Based upon the "individualized assessment" of the
facts presented herein and after consideration of all the
factors detailed in § 3553(a), we respectfully submit that
a sentence substantially below that of the advisory
guideline range is an appropriate and reasonable sentence
for the defendant Jerome Caramelli.

Jerry Caramelli is a 42 year old man who was born in
Brooklyn, New York. He is one of four children. He lived in
a middle income household and enjoyed the love and support
of both his parents. His father and mother divorced when he
was young and his father remarried and moved to Cape Coral
Florida. Jerry has memories of his father teaching him
sports and coaching his sporting events when he was a young
child. Jerry's father explains in Exhibit 2 how, for thirty

4

years, he was involved in community sports and he is proud
to see his son Jerome following in his footsteps. He writes
of Jerry that "he has always been kind and generous to
others and goes above and beyond for the community."
Jerome's step mother is a retired police officer with the
New York Police Department. A retired Evidence and Property
Control Specialist and Child Advocate, she writes of
Jerome's loving and caring ways and his ability to touch so
many lives. She explains to the Court how much his children
mean to him and to be absent from them would break his
children's hearts. (Exhibit 3) Jerome's mother resides in
Massapequa, New York and is employed at the Long Island
Power Authority. In Exhibit 4 Jerry's mother writes of what
a loving and devoted husband and father Jerry is. She jokes
that everyone tells Jerry how "he should run for mayor
because of all the young lives he has touched." She
explains to the Court how she raised four children as a
single parent and knows what Jerry's wife will face if he
is incarcerated for a long period of time. She asks the
court for leniency for her grandchildren.

    Jerry has two sisters and a brother who remain
supportive and is aware of the instant offense. Their
letters to the Court as Exhibits 5-7 all explain what a
hardworking family man Jerry is and how hard this has been
on his wife and children. They tell how Jerry was the one
everyone turned to for support and to "give the shirt off
his back to help."

    In 1999, Jerry married his wife Karen and they
went on to have three children together. Karen has a
master's degree in architecture and was employed as a
project manager for Bovis Lend Lease until 2001 when their
first child was born. Since their marriage Jerry and Karen
have had an excellent relationship.[2] She described her
husband as "honest, caring, dependable, very driven and
goal orientated." (See PSR paragraph 184). Karen explains
that Jerry is not the individual being portrayed and that
he was at the wrong place at the wrong time and that he

---

[2] The PSR paragraph 183 indicates an argument between Jerome and Karen
that led to an order of protection. Karen explains this to the
Probation officer in that it was a difficult time financially in their
marriage and it was a keyboard on the computer that accidentally was
damaged and that she did not want to pursue it. Jerry had never been
physically abusive to her and despite that difficult financial time,
their marriage has been excellent.

5

exercised poor judgment as to who he associates with.
(Exhibit 8).

Karen suffers from a non-cancerous pituitary tumor
that produces a hormone that affects her blood levels. The
medication Karen must take to control this disease results
in her being incapacitated and unable to care for the
children. When the medication is taken, Jerry is the
primary care giver who must care for the children since
Karen is unable. Unfortunately the medication must be taken
or else Karen's tumor would increase in size and become a
life threatening situation. His wife cannot drive, or care
for the children in any way once medicated. [3]

The couple has three children. Steven who is 10 years
old, Nicholas who is 8 and Joely who is 5 years old. All
three children are actively involved in sports such as
lacrosse, football, wresting and baseball. His five year
old daughter Joely is currently attending gymnastics and
cheerleading. Prior to Jerry's arrest he was involved in
coaching the sport teams for his children. He not only
coached lacrosse but also coached the baseball and football
teams for his eldest son Steven. As a result of his arrest
for the last 2 years, Jerry was put on electronic
monitoring and unable to continue coaching these teams
since he was unable to leave the house without permission
from his pre trial service officer. While on home
confinement during these past 2 years, there has never been
a violation or a report to the Court that Jerry is not in
full compliance of his bail conditions. However, this home
confinement has made him unable to help his wife Karen with
the three children which has put a significant strain on
their family.

This led to a difficult transition for his son who did
not understand why his father could no longer be his coach.
Jerry's eldest son has since grown resentful and angry at
the sudden change. This has become increasingly difficult
for Jerry because of the level of involvement he had in his
children's lives.

---

[3] A letter from Karen's doctor was provided for the Court as part of the
PSR and is also included as Exhibit 9. We hope to have an updated
letter prior to sentencing. The medication taken by Karen is usually
done in the evening which renders her incapacitated. Without Jerry in
the home Karen faces the choice of having to stop taking the medication
if there is no other adult in the home to assist with the children.

6

As your honor can see from Jerry's current family dynamics, he has by no means escaped punishment for his conduct. His children have already suffered immensely since the arrest and their father not being able to be actively involved in their sports and social events as well as the medical risks to his wife. He is aware of the gravity of his actions, and has accepted full responsibility for his offense. His letter to the Court, attached hereto as Exhibit 10 shows his true remorse. He begs the Court to be lenient not for himself but for the sake of his wife and children. His life has been turned upside down emotionally. As your honor can see from Jerry's letter, the level of remorse and shame he feels is enormous. There appears to be no sentence as harsh as hearing the question from his son "why doesn't daddy care enough to coach my games anymore." The fact that Jerry cannot be there for his children rips his heart in two. An avid coach for 14 years, coaching not only his own children, but others as well, should show the Court what type of man he really is. An avid volunteer in the community, he has been a support system, a father, a brother, a counselor and teacher to so many children. The fact that Jerry has been unable to be there for not only his own children but for the children of his community for the last two years while on home arrest, is a punishment that is already unbearable to himself and his family.

Jerry's dedication to youth and youth sports has been a passion of his for years. His commitment to not only his children but others he has coached is amazing. This dedication is demonstrated in the following letters:

A letter written from the father of a young man he had once coached, tells how Jerry not only touched his son's life but the lives of so many others. "Words cannot describe how much this man has done for my son not only as an athlete but as a young boy." (Exhibit 11) Another letter written by Colleen Ross tells how Jerome Caramelli "SAVED" her son's life. Her son, a troubled kid who couldn't find his way was given a job by Jerry and also guided on the right paths in life. Today, as a result of Coach Caramelli, her son is a successful businessman, husband and father. (Exhibit 12).

Exhibit 13, a letter from Josephine Joy, tells the Court that not only did Coach Caramelli take her son under his wing but also paid his fees to the football

7

organization each year so that her son could play the game
he loves so much. Coach Caramelli became an older brother
to her son, guiding him and keeping him on a straight path.

While Jerry fully acknowledges his illegal behavior, a
true measure of a man is how he helps others. This
character trait is clearly demonstrated in his overwhelming
participation as a volunteer in youth and youth sports.

Exhibits 14 through 16 are additional letters to the
Court from friends and family who share a close
relationship with Jerry. Their letters to the Court all
depict an honorable man who lives for his family and the
community. They portray a loving father, husband and friend
who constantly puts everyone first. They relay personal
insights on how Jerry has made a difference in their lives
and all ask the Court to give Jerry a second chance. These
letters coupled with the letters above truly show the real
character Jerry Caramelli.

All of these letters share the same theme. Jerry
Caramelli, an avid volunteer in the community touched the
lives of so many young children and guided them to a path
of success. Whether he paid for the sporting dues out of
his own pocket, took extra time out of his day to teach
them, or just offered a shoulder to lean on when they
needed support, for fourteen years he was present in
countless children's lives. He did so with no compensation
or awards but just out of the goodness of his heart.

Jerry Caramelli certainly poses "no" risk to the
public, and the risk of recidivism is virtually non-
existent. A lenient sentence below the recommended
guideline range is warranted given that there is no need to
protect the public from further criminal conduct of the
defendant or to deter future crimes. § 3553(a) (2) (B) and
(C). See also, United States v. Carmona-Rodriguez, No. 04
Cr. 667(RWS), 2005 WL 840464, *5 (S.D.N.Y. April 11,
2005)(below guidelines sentence imposed after considering
the low probability of recidivism); Simon v. United States,
361 F. Supp. 2d 35, 48 (E.D.N.Y 2005); United States v.
Hernandez, No. 03 Cr. 1257 (RWS), 2005 WL 1242344, *5
(S.D.N.Y. May 24, 2005). A substantially reduced sentence
does not mean Jerry has or will escape punishment. As the
Supreme Court noted in Gall, probation and/or supervised
release also amounts to a "substantial restriction of
freedom." 552 U.S. 38 (2007). As one District Judge

8

observed in a sentencing hearing conducted shortly after
the Supreme Court's decision:

> Gall recognized for the very first time
> in a very long time that probation is not
> nothing, that there are substantial
> restrictions on an individual's freedom
> in probation, that we can structure a
> probationary sentence that meets all the
> purposes of sentencing, and that is
> entirely appropriate. This way one of
> the things that the guidelines ignored,
> and the guidelines dramatically changed
> from preguideline practice and which the
> Supreme Court is essentially saying we can
> now look at again.

United States v. Ramos, 04-10275-NG (D.Mass. 2008); See
also Gall, 552 U.S. 38 emphasizing that section 3553(a)
directs the Judge to consider sentences other than
imprisonment.

Therefore, we respectfully submit that
application of those factors to this case warrants a
substantial departure for the advisory guideline range set
forth above.

### III. **FACTORS FAVORING A SENTENCE BELOW ADVISORY RANGE**

#### (a) Personal Characteristics and Family Circumstances:

As mentioned briefly above, Jerry has three young
children and is happily married to his wife Karen of 13
years. He has played an active role in the upbringing of
his children and has coached three different sports teams
for his eldest child prior to his current arrest. His
children are his life and it is devastating to think that
he would be incarcerated for a period of time and not be
there for them. As noted above in Exhibit 8, Jerry's wife
Karen writes a heart wrenching letter to the Court begging
for leniency not just for her husband but for her
children's sake. They enjoy a marriage joined by a small
community and close family members. She explains how they
grew up and were married in the same church she attended as
a child and that the Massapequa community is a huge part of
their lives. The most difficult part of Karen's letter
explains how she watches the tears and confusion that come

9

from her three children's faces when their father cannot be at their sporting events. Jerry, once a coach and an active member in their lives, never missing a game, is now a missing seat at sporting events. Jerry's family pays deeply for his actions. His children, unaware of the instant offense, are very aware of their father's absence. She writes that she is "thankful that their eldest stopped asking why Dad can't make his lacrosse games because it saves her from having to lie to her son again on why he isn't there." As you can see from her letter, Jerry's absence for a long period of time will be devastating to his three young children at ages that are most influential to their futures.

As mentioned briefly, his wife Karen suffers from a tumor illness that requires medication leaving her incapacitated and unable to care for the children when medicated. Without the medication, the tumors would increase in size. Jerry must be there for his three young children to drive them to and from school and sporting events and provide every day care when his wife is incapacitated due to the medication. Since the eldest child is only ten years old, it is mainly up to Jerry to meet the children's needs when his wife is unable. A long period of incarceration would be a huge detriment to the children, as well as the wife's medical condition.

With the exception of arrests arising out of a domestic incident in March with his wife where no criminal disposition resulted and a prior arrest in 1998 for possession betting slips (which resulted in a conditional discharge), Jerry has no criminal record. While he acknowledges and accepts his responsibility for his actions in the gambling offense, if he was given the opportunity, he would continue to live a life of volunteering for the youth and avoiding contacts with the criminal justice system. Jerry's main concern with respect to his sentence is his wife and three young children.

As mentioned in the PSR, Jerry owns and operates Caramelli Development which is a land development and construction company. Jerry is the main entity of the corporation in that he is the only person who goes and bids the constriction jobs, communicates with the subcontractors and prepares and arranges the renting of equipment necessary for the jobs. Although his wife Karen is listed as an equal partner in the company she is not at all

10

familiar with the day to day operations of the company. She would be unable to bid on construction jobs and does not have the knowledge or experience to rent necessary equipment or hire subcontractors. Without Jerry the business would be unable to obtain construction jobs and thus no income to support the family. Jerry's main concern is his wife and children. Without him the business cannot survive and his wife and children's livelihood would be significantly affected.

Additionally, Jerry is one of nine individuals who are partners in a catering business in Staten Island, New York. Jerry's responsibilities as well as his income from this business, is dependent on him working at the hall a few nights a week. A period of incarceration will not allow him to continue to work and earn money to support his family. Without this business and his construction business the family will have no means of income during any incarceration period.

## CONCLUSION

Jerry is truly remorseful for his criminal conduct. He asks the Court to consider this conduct as an aberration in an otherwise law-abiding and family-centered life. The emotional experiences both he and his family have faced since this event have been traumatic. The public nature of these charges coupled with the publicity generated from them, have caused him and his family shame and humiliation. Substantial punishment is not needed here. He has been punished tremendously already and will continue to be. He does not pose a threat to others or society.

Given Jerry's extraordinary volunteer work as a coach, lack of potential towards recidivism, his family circumstances, both economically and medically and the effect of his absence will have on his children, we respectfully submit that a sentence substantially below that of the advisory guideline range is warranted herein.

Respectfully Submitted,

Joseph R. Conway, Esq.

Cc: AUSA Rachel Nash

11

# Exhibit 1

# LaRusso & Conway, LLP

300 Old Country Road
Suite 341
Mineola, NY 11501
Tel: (516) 248-3520 • Fax: (516) 248-3522

December 16, 2011

Michael Dorra
United States Probation Dept.
75 Clinton Street
Brooklyn, N.Y. 11201

Re: United States v. Jerry Caramelli
Criminal Docket No. CR-10-010(ENV)

Dear Mr. Dorra:

I am in receipt of the Probation Report dated November
18, 2011. Unfortunately, I have been on-trial in Brooklyn
Supreme Court since November 12, 2011 and only saw the
report yesterday which was December 15, 2011. I am
submitting this letter setting forth my objections to the
report.

As an initial matter I am objecting to paragraphs 172,
223 and 209. Those paragraphs claim that Mr. Caramelli has
failed to file his 2007 tax return and also failed to supply
your office with a financial disclosure form. As to the 2007
tax return, that return was initially turned over to USPO
Nicole Pizzo. A copy of the filed return is attached hereto.
Additionally, per your request we sent the financial
disclosure form to your office on September 12, 2011.
Attached hereto is an original copy of that form, dated and
signed by my client on September 11, 2011. I respectfully
request that an addendum be filed correcting those
paragraphs.

Our second objection(s) deal with the offense conduct
section and all of the paragraphs in the offense conduct
that has nothing to do with my client. Specifically,
paragraphs 6-15 are irrelevant and should be stricken.
Paragraphs 56-119 relate solely to other defendants in this
case in which Mr. Caramelli has no connection to, and
likewise should be deleted from this report. Lastly, Mr.

Caramelli objects to the characterization in paragraph 19 that he is an "associate" with the Bonanno family.

Our final objection deals with the sentencing guideline calculations as to Count Ten. Specifically, we object to the 4 point enhancement for role in the offense. While Mr. Caramelli fully accepts his guilt in this Count and accepts his responsibility for such, Mr. Caramelli was not a leader manager or supervisor and did not direct the activities of the operation. Mr. Caramelli has acknowledged his guilt of his involvement in the operation but his role was limited to that of a runner who brought some of the bettors (here the CI'S) into the operation. Pursuant to the plea agreement entered into by the parties there was no enhancement for role in that agreement. As such we object to it here. The result of the 4 point enhancement increases the amount of units or levels when calculating the multiple counts. The guideline calculations in the PSR provide for 2 units which brings Mr. Caramelli's adjusted offense level to 22. We submit that without the 4 level enhancement, his adjusted offense level would be one point lower at 21.

Sincerely,

Joseph R. Conway, Esq.

cc: AUSA Rachel Nash

# Exhibit 2

December, 19 2011

Dear Sir,

I am writing this letter in reference to a case you have before you involving Jerome Caramelli .I am his Dad and I believe I am in the best position to speak to Jerry's moral character, so I hope you will take this letter into account when making your decision.

Jerry is in short, a good person. He has always been kind and generous with others. He was raised to have strong sense of duty, which applies in his job, community, and love of family. Which he does. He also possesses a great deal of integrity and constantly strives to make sure he is doing the right thing.

For thirty years I was involved in youth sports in the town of Massapequa, coaching and at the administration level. I prided myself on teaching young boys and girls of the community to be fine upstanding young citizens. I am very pleased that Jerry has picked up where I left off. He is very involved with the youth of the community he spends countless hours coaching youth Football, Lacrosse, and Baseball throughout the year. While also helping his wife who is not well take care of the three beautiful children they have.

It must be difficult for you to make decisions like this when you don't actually know the person standing in front of you, so I hope you will look at my letter and the countless others you are receiving, and understand that Jerry is the kind of person around whom people rally. That has to say something, so please let that factor into your decision.

Thank you,

Steven J Caramelli

# Exhibit 3

December, 20 2011

To Whom it may concern:

My name is Catherine Caramelli and I am the stepmother to Jerome Caramelli. I am retired New York City Police Department Evidence and Property Control Specialist. I am also a Child Advocate for Lee County Florida. I volunteer my time for the abused and neglected children . I am writing this letter on behalf of Jerome Caramelli's case which is pending in United States Federal Court.

Jerry was brought up in a very strong bonding family. He was taught great family values by his mom and dad and extends these same values to his children and many others he come's into contact with during extensive coaching in many sports. He is very highly looked up to for his respect especially to the elderly and many people in need. He is extremely generous, loving and caring and assists with his own family due to his wife having some medical issues.

Jerry has two sons and a daughter who adore their dad and need him in their life everyday. It would be greatly appreciated if all this can be taken into some good consideration. I myself cannot express enough how much his children and wife need him but I can tell you I am raising my son's little girl here in Florida after he passed away from a Brain Tumor and I see her hurt everyday for not having her daddy in her life.

I respectfully appreciate your consideration in all the residing factors for Jerry.

Catherine Caramelli
P.O. Box 151048
Cape Coral, Fl. 33915-1048
Cell #239-699-3289

# Exhibit 4

February 4, 2011

Dear Honorable Judge Vitaliano,

My name is RoseMary Caramelli and I am the mother of Jerome Caramelli. My son graduated from both Catholic Elementary and Catholic High School. He continued his education at Roanoke College in Salem,Virginia on a Lacrosse Scholarship where he developed a love for both business and athletics. Till this very day he shares his passion with so many young children coaching not only Lacrosse but also Football and Baseball. So many children through the years have been inspired by not only his dedication but his overwhelming concern for their success. He truly loves coaching and gives so much of his time to the children of the community. His wife, a graduate of The University of Virginia and The University of Pennsylvania often jokes of how he should run for mayor because of all the young lives he has touched. They have been married for over 10 years and he is the father of three beautiful children aged 10, 8 and 5. His relationship with his children could not be any stronger. It frightens me to death knowing that they can be ripped apart.

From an early age, Jerome always displayed good Christian values and showed sensitivity and kindness to those with personal struggles. As an adolescent, he was very popular, well liked in school and always had many friends. He took a special interest in one particular classmate, a young disabled girl afflicted with cerebral palsy that used assistive devices to ambulate. She sat by herself during lunch period and he expressed to me that he felt sorry for her because she sat alone, so he decided to sit with her instead of with his friends. Eventually, his friends joined Jerome and the young girl. It didn't surprise me because this is true to his nature.

As an adult, I see my son as a loving and devoted husband and father. Jerome was always a good athlete and now enjoys volunteering his time to local sports organizations that his young sons are involved in. He shows the same interest and devotion to his siblings, nephews and me as well. I witnessed his love and commitment to his grandparents who have since passed away at the ages of 89 and 90 years old. Realizing the difficulties they endured as they progressed in age, and no matter how busy with his own family, he always made an effort to be there for them. My parents lived with me, so I know just how much they appreciated his kindness and support.

Having raised four children as a single parent, I know the challenges my daughter-in-law and grandchildren will face if their father is incarcerated. I truly do not know how this will effect my grandchildren not having their father home at such an important time in their lives. I respectfully ask for your consideration before determining Jerome's sentence.

Yours sincerely,

RoseMary Caramelli

# Exhibit 5

Denise Caramelli
560 W. Broadway, Apt. 5A,
Long Beach, NY 11561
(516) 578-2226

January 6, 2012

United States District Court
Eastern District of New York

**To The Honorable Eric N. Vitaliano**

Thank you for taking the time to read this letter before you make your sentencing with regards to my brother, Jerome Caramelli.   My name is Denise Caramelli, I have been a legal assistant for 20 years, first in the law firms of Dewey Ballantine and O'Melveny and Myers, and now currently the financial firm Och-Ziff Capital Management Group.

I understand my brother made a mistake, and I know he is incredibly remorseful.   He is not perfect, but that is only one part of him.   There are many other parts to my brother that I know and love.

I've grown up always knowing my brother was someone I can rely on.   He is the glue that keeps my family together.   He opens his home every weekend for Sunday dinners to continue our family traditions.   He has always provided a place for all of us to gather on holidays.   Family is very important to him.   He is a loving husband to his wife Karen and a devoted father to his three beautiful children Steven, Nicholas and Joely.   He is a dedicated family man with a big heart.

My brother has added much to the lives of many people.   He has many friends who love him dearly.   He is an active member in his community as a volunteer, between fundraisers and coaching baseball, basketball, and lacrosse.   So many of these children and their parents look up to him because of his dedication and strive for their success.   My brother is a kind, generous man who would give the shirt off his back.

Jerry has always worked incredibly hard on his business endeavors.   He feels an excessive amount of pressure to fulfill his obligations and provide for his family.

It is my hope that when you decide how it is that my brother Jerry should be held accountable for his actions, that you please consider the type of man he always sought to be and most often truly was, caring and of benefit to others.   He has been under house arrest for quite some time now, and I see how hard it's been on his wife and children who love and depend on him.   I fear if he is incarcerated, what effect it will have on his children who need his continued love and support. Thank you again for your consideration in this life altering matter.

Sincerely,

Denise Caramelli

Denise Caramelli

# Exhibit 6

January 5, 2012

Maria Genovese
6 Block Boulevard
Port Jeff Station, NY 11776


Honorable Eric Vitaliano
United States District Court for the Eastern District of New York
225 Cadman Plazas
Brooklyn, NY 11201


To Honorable Eric Vitaliano,

My brother Jerry represents a lot of things to me, my family and to the community in which he lives. Jerry is a good father, uncle, son and coach. He has a great sense of tradition and makes sure his children understand the meaning of family. I have been a witness to all the good Jerry has done.

He is the brother who was there during my divorce. When my marriage ended Jerry took the time from his busy schedule and drove out to meet me with the kids and listened. He lent me a shoulder to cry on. He also attends my children's sporting events when their own father isn't able to come. This means a lot to my boys and me knowing that they have someone that takes a personal interest in the special events of their life.

He is the uncle who stepped up when my son Christopher was 7 years old and really wanted to learn to ride a bike but was just too scared to try. Jerry took the time and worked with him and got him over his fear and taught him to ride his bike. He also has helped teach my son to pitch a baseball. My son enjoys playing sports and was interested in pitching but didn't have the focus. Jerry spent the time teaching him techniques and ways to keep him on target.

He is the Grandson who my Grandmother would call if she needed anything. When Grandma was in the hospital Jerry visited every day. When she passed away Jerry made sure she was remembered with dignity and respect. I believe that it was his close relationship with Grandma that gave him his strong sense of Family.

He is the coach who takes a personal interest in the development of his team. He has dedicated his time to his son's sports teams by taking on leadership role. He gives freely of his time and knowledge of sports to all the kids on the team. He speaks very highly of all the kids and has a genuine stake in their success.

He is the family man that requests we all come and share Sunday dinner. Jerry enjoys being surrounded by family. Although we don't live in the same town and all have very busy lives we are invited to Jerry's house every weekend for dinner.

Jerry takes pride in his work at the catering hall. When we were at his place of work for a party he gave all the kids a tour of the place and they were thrilled. My boys talked about it for weeks. They were so proud that there Uncle Jerry showed them around.

Jerry's passion for tradition and family is apparent in everything he does. Jerry is a loyal friend and works hard at supporting the people around him. He is a valuable member of our family and I am lucky to have him as a brother.

Sincerely,

Maria Genovese

Maria Genovese
631-828-8438

# Exhibit 7

Steven Caramelli
275 Park Lane
Massapequa Park, N.Y.11762

January 1, 2012

Your Honor,

My name is Steven Caramelli and I am the younger brother of Jerome Caramelli. I am writing this letter because my older brother means very much to me and I wish you knew him as I did. The most I can do is write you this letter and tell you how much he means and how important he is. Not only to me, but to the rest of his family.

My brother graduated from both Catholic Elementary and Catholic High School. He continued his education at Roanoke College on a Lacrosse Scholarship. My brother has been married for over 11 years and is the father of three beautiful children.

From an early age, my brother has always been a very kind, caring and supportive person with a huge heart. Who would do anything for the people he loved, sometimes to a fault. He was the type of older brother anybody could wish for. I have always looked up to my older brother and admired his ways. As I've seen many others do over the years, with him being a coach and a mentor to many childen in the community.

As an adult, I see my brother as a loving and devoted husband and father. Jerome was always a good athlete and volunteers much of his time to coach local sports organizations that his young sons are involved in. He has always enjoyed the company of his loved ones and spends quality time often, which has always been very important to him. I witnessed his love and commitment to his grandparents who have since passed away at the ages of 89 and 90 years old. Realizing the difficulties they endured as they progressed in age, and no matter how busy with his own family, he always made an effort to be there for them.

With knowing how important my older brother is to everyone and seeing how much he does. Not only for his family, but for the community. I know the challenges my sister-in-law and niece and nephews will face if Jerome is incarcerated. I respectfully ask for your consideration before determining his sentence.

Yours sincerely,

Steven Caramelli

# Exhibit 8

Karen Caramelli
207 Whitewood Drive
Massapequa Park, NY 11762

November 25, 2011

United States District Court
Eastern District of New York

**Attn.: The Honorable Eric N. Vitaliano**

Re: Jerome Caramelli
Docket no. 10-CR-10(S-5)-01

Dear Honorable Sir:

After a very long 21 months, I have been presented with this thick sheaf of papers- a report with my husband's name on top adjacent to the words "United States of America". It is chilling to say the least. Sobering, frightening, depressing and other words come to mind as well as I read through the presentence report written by a clerk in a government office whose job it is to get this report finished up and move on to the next one. So much weight placed on the fate of a man and his family's future wrapped up in a stack of paper ¼" thick. However, I have great faith in our system of justice. I have said many times there is no better one on the planet. It is on this premise that I write this letter and put my trust that you, Sir, will have mercy on my little family and let us move forward with our lives.

We live in a suburban Long Island community- my husband and I both grew up here and settled here after college. Our family and friends are here. We are deeply entrenched in small town life here. My 3 young kids go to the same elementary school I did. My husband and I married in the parish that he grew up part of. Both our mothers live here, within a mile or less of us. We have family dinners each Sunday. I am on the PTA- Jerry coaches PAL sports. This is what we do . This is who we are.

It has been 21 months now of house arrest for my husband- and for my children and I. Twenty one months of missed business opportunities. I don't need to remind you of the trying economic times the past few years, Sir. My guess is you have felt the pinch as well. Twenty one months of lying to my children why Dad can't come with us to a family party or down the block to our close friends' summer barbeque. My eldest, Steven, stopped asking why Dad can't make his lacrosse game or football game. I am thankful he no longer asks because it saves me from turning my eyes away from his when I lie to him yet again. He will be 11 this month- a little man. His 11 year old shoulders should not have to carry the weight of his father being incarcerated. Small town's have their drawbacks too, Sir.

Our middle son, Nicky, is 9 and our daughter, Joely, is 6. They, too, have gotten used to being the only kids at the school functions, the wrestling match, the soccer game, with only Mom yelling her head off to "run faster!" or "grab his left leg!"   I will call myself selfish- to use another word would be false. I am tired of coming up with excuses for my babies- to protect their hearts.   I am done with feeling like the single parent. I need my husband back in his primary role, his most important role as father and husband for me and my family. I want my marriage back as it should be for two still young healthy adults.

Finally, Sir, I will ask you one more time to have mercy on my husband at sentencing. He is a good man. He is a good man with all the best intentions. I will not deny he has made some poor decisions and used poor judgment. For this he punishes himself incessantly. He is well respected in our community as a volunteer. He is deeply loved by his friends. He is cherished by his wife and his children. I plead that you consider the last 21 months as time served by Jerry, and by his family. Please let us move forward as a family and as citizens of our community.

Respectfully Submitted,

_Karen Caramell_

# Exhibit 9

OBSTETRICAL & GYNECOLOGICAL SERVICES
OF ROCKVILLE CENTRE
165 NORTH VILLAGE AVENUE
SUITE 204
ROCKVILLE CENTRE, NEW YORK 11570

(516) 764-5380
FAX (516) 764-1915

ARNELLE HEIM BLINDERMAN, M.D., FACOG
LESLIE A. KING, M.D., FACOG

KAREN A. WHEELER, CNM
ELIZABETH FITZSIMMONS, CNM
SHELLEY IOLI, PA

January 10, 2012

**RE: Karen Caramelli**
**DOB: 1-29-1968**

To Whom It May Concern:

Karen Caramelli is receiving medical care from me for treatment of prolactinoma. She takes Parlodel (bromocriptin) for this condition. Parlodel can have the following side effects:

- Extreme drowsiness, falling asleep suddenly, even after feeling alert;
- Confusion, hallucinations;
- Feeling like you might pass out;
- Dangerously high blood pressure (severe headache, blurred vision, buzzing in one's ears, anxiety, chest pain, shortness of breath, uneven heart beats, seizures);
- Sudden headache, numbness or weakness, or problems with vision;
- Pain when one breathes, fast heart rate, feeling short of breath (especially when lying down);
- Pain in one's chest, on one's left side, or behind one's breastbone;
- Back pain, swelling in one's ankles or feet, urinating less than usual or not at all;
- Runny nose, unusual taste in one's mouth;
- Black, bloody, or tarry stool; or
- Coughing up blood or vomit that looks like coffee grinds

Less serious side effects may include:

- Mild headache, dizziness, tired feeling, mild drowsiness;
- Nausea, vomiting, stomach pain, loss of appetite;
- Diarrhea, constipation;
- Cold feeling or numbness in one's fingers; or
- Dry mouth, stuffy nose.

Sincerely,

Arnelle Blinderman, MD

# Exhibit 10

September 7,2011

Dear Judge Vitaliano

I sit here at my desk on this seventh day of September, Two Thousand Eleven at Five Thirty Eight in the morning searching for the right words to say. I have this agonizing thought of humiliation I have put on my family as well as my Mother and Father that will forever haunt me. Every day I struggle with the fact that it is my poor judgement that has compromised not only the very name my children bare but everything I have worked for. My mother raised me to be honest, respectful, caring and considerate. The very values that I have made a priority to pass on to my children. I have been very fortunate in my life to have a mother who lived her life for her family. The poor judgement I have displayed is no way to repay her.

I grew up in the quite town of Massapequa Park where I attended Our Lady of Lourdes School and later Saint John the Baptist High School. This is where I developed the social skills and family values that mean so much to me today. Your Honor, I live for my children. The thought of having to be pulled away from my children not only breaks my heart but makes me physically ill. I am actively involved in every aspect of my children's lives. For the past fourteen years I have been able to do something that I find to be a true passion in my life. That is coaching little kids in my community. I have been coaching baseball for The Massapequa Coast Little League, football for The Massapequa Mustangs and lacrosse for The Massapequa Mud dogs. These volunteer coaching jobs take place through the spring, summer and fall annually and for the past five years I have been able to coach my eldest son Steven and for the past two years my middle son Nicholas. Since being under the strict house arrest I have been unable to coach. This has been very difficult for me because I have let down so many boys who I have established a bond with as well as my own children. These boys look up to me and trust and confide in me in a way that touches my heart. I have been forced to be untrue with so many families using work as an excuse to be unable to coach when really it is a punishment that has tortured me mentally. Sir, I am not

the person Mrs. Nash has portrayed me to be. I find it humiliating and embarrassing having to read and hear words that I cannot identify with. It scares me to think that you as well as my family and friends view me in this light. I have always been a hard worker and I like to think I am a good husband and father to my children. I pray every night that I can continue to do so and be a better man then I was yesterday.

Your Honor, I am also very concerned for the health and safety of my wife and children. Five years ago my wife was diagnosed with a condition known as Prolactinoma. My wife has been under the care of Dr Arnelle Blinderman since being diagnosed with this condition. She takes Parlodel (bromocriptin) for this condition. Every night before going to sleep she takes this pill which causes extreme drowsiness, confusion etc. Since she has been taking this medication I have witnessed many incidents where she was unable to walk to the bathroom or even be conscious enough to comprehend. I have awaken to find her on the floor on many occasions. I have never left my children alone in the house with her through the night since she has been under this treatment.

I have done everything I can to keep this away from my children. In doing so, and under strict house arrest for two years has created great confusion for them. To hear my ten year old son Steven ask my wife "why doesn't daddy care and come to my football games anymore" cuts through me like a knife. This hurts me more than anyone can imagine. To know my six year old daughter Joely looks out the window during gymnastics class to see I am not there breaks my heart.  To know my eight year old son Nicholas thinks I do not like watching him play baseball anymore makes me want to cry. My relationship with my children and my need and importance to be a good father has been hampered in such a way that I will never know what this has done to them. Sir, I Love my children more than life itself. These are such precious years in their life where the foundation between myself and my children are built. The rest of my life I will never know what this will do to them if I am absent during this fragile time in their lives. Sir, please give me the opportunity to spare what is left of everything I have worked so hard for in my life and begin to grow with my wife and children again.

Sincerely,

Jerry Caramelli

Jerry Caramelli

# Exhibit 11

December 12, 2011

Dear Judge Vitaliano

My name is Peter Petrakis and I am writing this letter to tell you how Coach Caramelli has affected my sons life. My sons name is Angelo Petrakis and has been fortunate enough to have Coach Caramelli as both a football coach and a lacrosse coach over the past four years. Sir, words cannot describe how much this man has done for my son not only as an athlete but as a young boy. I have watched Coach Caramelli put endless amount of hours not only coaching all these young boys but I have seen Coach take a special interest in my son. I watched over the years Coach Caramelli groom my son into a very dominate face off midfielder for The Massapequa Muddogs travel lacrosse team and a standout running back for the Massapequa Mustangs travel football team. To say I am a proud parent would be an understatement. I grew up never involved in any organized sports programs so I am not very knowledgeable in athletics. I learned through many other parents that Coach Caramelli was a very talented athlete as a young boy and was a very successful High School and College Lacrosse player. I learned that he was a dominate face midfielder. To watch him take such an interest in my son and spend so much extra time passing on his knowledge and seeing how successful my son has become at that very same position at such a young age is not only priceless to me but touches my heart in such a way that it brings a tear to my eye. Just this past September Angelo tried out for an elite club team known as "Team 91" . He made the team as the starting face off midfielder. After finding out of his accomplishment he could not wait to call Coach Caramelli and tell him the news.

Everybody knows how dedicated Coach Caramelli is to so many boys that have been lucky enough to play for him. His passion and commitment are second to none and the success the Massapequa programs have had over the years is a direct reflection of that very same dedication. I will always remember what my son has learned from Coach Caramelli on the field but it is what he has taught my son off the field that made me realize what kind of man he really is. Every Sunday

the Massapequa Mustangs Travel football team would have their scheduled game for the week. At each and every game every player would have to get weighed in. Coach Caramelli would have the team lined up in a straight line in front of the PAL referees as well as the opponents coach. Every boy would state their name before they stepped on the scale and once recognized they were under the required weight they would step off the scale, turn to the opponent's coach, look him in the eye and shake his hand and then do the same to the referee. Each and every boy with the upmost respect would do the same. This was something that Coach demanded from every boy.  I remember noticing that no other team did that. Over the years I noticed that opposing coaches started to do the same. This was the kind of positive influence that Coach shared not only with boys he coached but people who have been fortunate enough to be around him as well.

Every year in the spring Coach would make sure that each boy would do something special for their mother on Mothers day. I can remember picking up Angelo from lacrosse practice one night and asking him how it went. He told me that they only practiced for 30 minutes because they spent the other hour and a half making a card for Mothers Day. I asked him why it took so long to make a card? Angelo said, "because we had to write down one thing for every year we were born that we were thankful to Mom. Some kids took a long time to think of nine things to write down".  As much as I wanted to laugh I just drove the car staring and thinking how thoughtful that was. What it comes down to is he is not just teaching them sport but to grow up to be men as well and that is special. I hope you can get an idea of what kind of person Coach Caramelli is and how many boys as well as parents he has touched over so many years. He has truly touched mine as well as my wife and my sons. Thank You for taking the time to read this letter.

Sincerely,

Peter Petrakis

# Exhibit 12

February 7, 2010

Honorable Eric N. Vitaliano
United States District Court

Dear Judge Vitaliano,

I am writing this letter on behalf of Jerome Caramelli to let you know that he helped me SAVE
my son's life.

Jerry was an assistant football coach when my sons were in their early teens. He connected with
all the kids on the team and gave his time and expertise to the boys. He saw that my son Rob
was an angry young guy and had the potential of getting into serious trouble. He offered my son
a job at his Pizzeria and had him working as soon as he got out of school and kept him there until
closing. He saw what a hard worker Rob was and after about eight months he gave him a
managerial position with many responsibilities. He would talk to Rob about trying to stay in
school and get his diploma ALL the time. Jerry gave Rob a piece of his heart. Rob worked for
him for over five years, growing, saving money, maturing until he found his niche.

Today Rob is a successful and established man with a beautiful wife, twin children, a lovely
home in Amityville. He has been an iron worker for over ten years. He is well respected in his
community. He has many healthy hobbies.

Your Honor, Jerry Caramelli guided my son in a positive direction and gave of himself. Rob
would not be the Man he is today had it not been for his intervention. Jerry Caramelli helped me
save my son's life and I never even asked him to.

Respectfully Yours,
Colleen M. Ross
349 Ocean Avenue
Massapequa Park, N.Y.
11762
516-798-4596

# Exhibit 13

February 7, 2011

Your Honor:

This letter is being written on behalf of Jerome Caramelli. I have been a friend of the Caramelli family for more than twenty years, since my son was a little boy and began playing football for the Massapequa Mustangs. At the time I was a single parent barely making ends meet. The Caramelli family paid the fees to the football organization each year so that my son could play the game he loved so much. Jerry was an assistant coach helping his dad. He took my son under his wing and became like an older brother to him, guiding him and keeping him on a straight path. He taught him to play hard but with respect and sportsmanship.

A few years later, Jerry owned a local pizza parlor and employed my son. He taught him the value of earning a dollar and instilled in him proper work ethics. Jerry encouraged him to save money, work diligently, and treat people with respect and a smile.

Coincidentally, during this time, Jerry's elderly grandparents were patients of the doctor whose practice I now manage. Jerry drove his grandparents every three months for their office visits. He was always attentive to them, caring for them and running errands. Jerry's grandfather adored him, always saying

great things about him. He was so proud of him. He loved to "hang out" with
Jerry at the pizza parlor. When his grandparents passed, Jerry was
heartbroken.

There were a few times when I had a problem in my house, something would
break or needed fixing. Jerry volunteered to help out and never accepted any
kind of payment. He was taught to be a gentleman by both his dad and his
Grandfather.

In closing, I have known Jerry since he was a teenager. I have always known
him to be caring and loyal. He has helped many youngsters over the years
giving them direction and keeping them busy playing sports or working hard
so that they would not get into trouble on the streets. Jerry has been a loving
grandson. He has been a true friend. And I now see Jerry as a loving husband
and committed father who has given back and is still giving back to his
community in so many ways.

Whatever troubles Jerry has encountered, they do not reflect the person that
he is or has been over the years. My husband and I remain supportive and
offer any help Jerry and his family may need.

Respectfully,

Josephine Joy
69 Central Avenue
Amityville, NY 11701

# Exhibit 14

14 Craig Drive
Huntington Station, NY 11746
(631) 424-1223

January 3, 2012

To the Honorable Judge Vitaliano,

My name is Kevin Zaharios, and my wife is Domenica Zaharios. We are writing to you on behalf of
Jerome Caramelli. My wife and I are both aware of Jerry's current situation, and we felt compelled to
write you this letter.

I have owned my wood flooring business for over twenty years. I am also employed by the Huntington
Union Free School District as a varsity football coach and security guard at Huntington High School. I
have been involved with the Suffolk County PAL Youth Football and Lacrosse programs for over 10 years.
I now serve as a board member for Suffolk County PAL Football organization. My wife is employed by
the South Huntington Union Free School District as a para-professional at Stimson Middle School. I
personally have known Jerry for more than ten years, but my wife has known him and his wife for more
than thirty years. They were childhood friends.

In the time I have known Jerry, I have seen many aspects of his personality and character. I have found
him to be kind, dependable, and well regarded by others. He is a community-minded individual who
puts the needs of others before his own- which is evident through his volunteer work with the PAL
football and lacrosse programs. His love of coaching children is a true testament of his character. His
absence would be missed by many. My wife, Domenica, knows him as a true family man- dedicated and
strongly committed to his wife- Karen and their three children- Steven, Nicholas, and Joely. They need
him to be a part of their lives.

We thank you for your time and with great respect ask you to take these words into consideration when
sentencing Jerry, and to please take into account the children whose lives he has touched, and especially
how his absence will affect the lives of his wife and young children.


Sincerely,

Kevin Zaharios

Domenica Zaharios

# Exhibit 15

April 7, 2011

Honorable Eric N. Vitaliano
United States Federal Court

Dear Judge Vitaliano,

I write this letter with great concern on behalf of Jerome Caramelli. My name is Thomas Engelke and I am the PAL Director for The Massapequa Mud Dogs Lacrosse Youth Program. Jerome has been a coach in this program for the past seven years who not only volunteers his time to these young children but his passion in working with these children and his knowledge for the game is parallel to no other. It is my job to assign coaches at grades One, Two, Three, Four, Five and Six as well as organize team rosters and schedules. As a program we currently have 463 children and 36 coaches assigned as coaches to these teams. I can say without any hesitation or regret that Jerome is the best coach, teacher and role model that I have. Every year I get endless requests from parents asking for their child to be placed with Mr Caramelli. He truly loves working with the children and has a way of teaching the game, instilling structure and discipline all while having fun. The community is in need of more people like Jerome.

I have a vivid memory of being down at the crowded field of John Jay Burns Park years ago on a weekday evening with Lacrosse season in full swing and there is Jerome Caramelli in the middle of practice dressed in his shirt and tie with his slacks and shoes on, obviously did not have time to stop home from work to change his clothes, but their he is with his sleeves rolled up instructing and preparing his team for their next game. His manner and his relationship with the children is truly a sight to see. It saddens me to hear of Jerome's troubles but I have to say that their has to be more to the story because this is not the man that I have come to know over the past decade. I know him as an avid volunteer, a caring man, and most importantly a great father. Mr Judge Vitaliano , our community needs more role models like Jerome Caramelli so I ask you to please consider this letter before sentencing. I speak on behalf of all the children that pass through this program in this great community that we need him.

Sir, ThankYou for your time

Sincerely,

Thomas Engelke

# Exhibit 16

February 3, 2011

Honorable Eric N. Vitaliano
United States District Court

Dear Judge Vitaliano,

My name is Captain Robert C. Humann 3rd. I am writing this letter of behalf of my friend and
mentor Jerry Caramelli. I have known Jerry for the better part of my life. Our friendship started
during my early childhood when Jerry's father coached my football team. During this time
Jerry's father would chauffer my brother and I to our games and practices. This was where our
bond began. I looked up to Jerry as an older brother. That admiration for him carried on into my
teenage years and still continues today.

As a teenager I struggled with authority and had the potential for going down the wrong road in
life. Jerry saw the choices I was making and took it upon himself to redirect me. At this time
Jerry was the owner of a pizzeria. He put me to work, working long grueling hours and always
on weekend nights. He gave me responsibilities and showed me trust. After a couple of months,
I went from an employee to store manager. I see now that the reasoning for Jerry being so strict
and on top of me was to keep me out of trouble. His goal was to keep me on the straight and
narrow the best way he knew how. Jerry showed me how to be respectful, act responsible and
the benefits of hard work.

I have had the opportunity to witness firsthand what an upstanding father and husband Jerry is to
his three children Stephan, Nicholas and Jolie and wife Karen. This is especially important to me
because I am the product of a single mother household. I have had the good fortune to learn
from and emulate him in my family life with my wife and three year old twins.

Your honor, I can honestly say without reservation, that if Jerry were not in my life, I would not
be where I am today. I have been a successful Structural Iron worker for 13 years, a boat
Captain, a husband and most important father. I am currently looking to start a business in the
charter boat hunting and fishing market. All of these things I could not have accomplished
without the never-ending support and guidance from Jerry. I ask that you strongly consider this

letter when reviewing Jerry's upcoming legal proceedings and take into consideration how many people's lives he's affected in a positive manner. Thank you for taking the time to read this letter.

Respectfully,

Robert C. Humann 3rd

11 Mole Place

Amityville, N.Y 11701